## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF GEORGIA
## COLUMBUS DIVISION

| | | |
|---|---|---|
| S.S., | : | |
| | : | |
| Petitioner, | : | |
| | : | |
| v. | : | Case No. 4:25-cv-45-CDL-AGH |
| | : | 28 U.S.C. § 2241 |
| PAM BONDI, *et al.*, | : | |
| | : | |
| Respondents. | : | |

## ORDER AND REPORT AND RECOMMENDATION

Currently pending before the Court is Petitioner's application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1).  For the reasons explained below, it is recommended that Petitioner's application for habeas relief be granted.[1]

## BACKGROUND

Petitioner is a sixty-two-year-old native of the Soviet Union and a citizen of Russia.  Pet. 4, 8, ECF No. 1; Erickson Decl. ¶ 3, ECF No. 4-1.  On September 24, 1992, Petitioner entered the United States at New York, New York as a refugee. Pet. 4; Erickson Decl. ¶ 5.  On March 8, 1994, Petitioner became a lawful permanent resident of the United States.  Pet. 4; Erickson Decl. ¶ 6; Resp'ts' Resp. Ex. A, ECF No. 4-2.

---

[1] Petitioner also filed a motion to compel (ECF No. 11) and an emergency motion to rule on his application for habeas relief (ECF No. 16).  The Court construed Petitioner's motion to compel as a motion seeking additional evidence from Respondents and directed Respondents to provide a status update.  Text-only Order, ECF No. 12.  Consequently, Petitioner's motion is granted.  Further, Petitioner's motion requesting a ruling on his habeas petition is granted to the extent the Court files this Report and Recommendation recommending a ruling on his petition.

Following his status adjustment, Petitioner received multiple criminal convictions under Georgia law. Pet. 4; Erickson Decl. ¶ 7-8. On December 2, 1996, Petitioner was convicted of driving under the influence. Erickson Decl. ¶ 7. On March 30, 1999, he was convicted of simple battery, criminal interference with government property, battery, and criminal trespass. *Id.* On June 4, 2010, he was convicted of willful obstruction of law enforcement officers. *Id.* Finally, on May 17, 2011, he was convicted of attempted murder, two counts of aggravated assault, aggravated battery, two counts of first-degree arson, and burglary. Pet. 4; Erickson Decl. ¶ 8.

On July 7, 2011, the United States Department of Homeland Security ("DHS") issued a Notice to Appear ("NTA") charging Petitioner as removable under the Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1227(a)(2)(A)(iii), for having been convicted of aggravated felonies. Erickson Decl. ¶ 9; Resp'ts' Resp. Ex. C, at 1, 3, ECF No. 4-4. On March 6, 2014, an immigration judge ("IJ") ordered Petitioner's removal. Erickson Decl. ¶ 10; Resp'ts' Resp. Ex. D, ECF No. 4-5. Both parties waived appeal, rendering Petitioner's removal order final the same day. *Id.*

After serving his term of imprisonment with the Georgia Department of Corrections, Petitioner entered immigration custody on June 26, 2024. Erickson Decl. ¶ 11. On August 14, 2024, officials at the Russian Consulate interviewed Petitioner. *Id.* ¶ 12. On August 19, 2024, Immigration and Customs Enforcement ("ICE"), Enforcement and Removal Operations ("ERO") submitted a travel document

request to the Russian Consulate. *Id.* ¶ 13.  On September 16, 2024, the Russian Consulate requested additional forms, which ERO completed and submitted on the same date. *Id.* ¶ 14.

On September 26, 2024, ICE/ERO completed a 90-Day Post-Order Custody Review ("POCR"), and on October 16, 2024, ICE/ERO served petitioner with a letter explaining its decision that Petitioner remain in custody. *Id.* ¶ 15; Resp'ts' Resp. Ex. E, ECF No. 4-6.  ICE/ERO declined to release Petitioner because he "[did] not established to ICE's satisfaction that [he] is not a flight risk or danger to the community or U.S. security."  Resp'ts' Resp. Ex. E, ECF No. 4-6.  On November 1, 2024, the Russian Consulate requested additional forms and Petitioner's valid photo identification.  Erickson Decl. ¶ 16.  In January 2025, ICE/ERO completed Petitioner's 180-Day POCR, and on January 16, 2024, ICE-ERO served Petitioner with a letter explaining its decision to continue his detention.  Lasker Decl. ¶ 6, ECF No. 4-8.  At the time, the Russian Consulate was still attempting to confirm Petitioner's identity.  Lasker Decl. ¶ 7.

Petitioner filed his application for habeas relief on February 5, 2025, seeking relief under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because he is subject to a final order of removal and has been held in detention for over six months.  Petitioner alleges that he has "cooperated with ICE['s] efforts to remove him from the U.S." and that those efforts have been unsuccessful.  Pet. Attach. 4, ECF No. 1-1.  Furthermore, Petitioner alleges that he "spoke with Russian Embassy Counsel Nikita Sergeevich, he confirm[ed] that the Russian Government can't provide the travel document to

3

Petitioner, because[e] they don't have any record of Petitioner, and his removal to Russia in the near future is impossible." *Id.* Respondents filed an initial response on February 27, 2025, asserting that Petitioner "presents no evidence to show that he is not likely to be removed in the reasonably foreseeable future[;]" thus, his Petition should be denied. Resp'ts' Resp. 5. Respondents further argue that "a significant likelihood of [Petitioner's] removal in the reasonably foreseeable future exists" because "[r]emovals to Russia are taking place and can be accomplished under the circumstances presented by Petitioner's lack of identification." *Id.* at 8.

Petitioner filed a reply on March 25, 2025, wherein he reasserted his *Zadvydas* claim. Pet. Reply. 1-10, ECF No.7. On November 14, 2025, Petitioner filed a motion to compel, in which he attached an alleged letter from the Russian Embassy claiming that the "Consular Section is not in a position to issue a travel document [to Petitioner]" because "it was not possible to confirm that [Petitioner] holds Russian citizenship." Pet.'s Mot. to Compel Attach. A, ECF No 11-1.

The Court ordered Respondents to respond to Petitioner's motion to compel, wherein they were required to "outline any efforts at removal since February 2025 and specifically provide whether they have received travel documents for Petitioner." Text-Only Order, Nov. 18, 2025, ECF No. 12. Respondents filed their response on December 10, 2025. Resp'ts' 2d Resp., ECF No. 15. ICE Supervisory Detention and Deportation Officer ("SSDO") Tartanger L. Stephens averred that ICE/ERO and the Removal and International Operations ("HQ-RIO") division at ICE Headquarters have been working since February 2025 to obtain a travel document for Petitioner

and facilitate his removal.  Stephens Decl. ¶ 3, ECF No. 15-1.  According to Stephens, "the Russian consulate indicated they could not verify [Petitioner's] citizenship; therefore, they could not issue a travel document."  *Id.* ¶ 9.  As of December 9, 2025, Stephens claimed that HQ-RIO was working to remove Petitioner to a third country. *Id.* ¶ 11-12.

## DISCUSSION

Petitioner claims that he is entitled to release under *Zadvydas* because he has been detained longer than the presumptively reasonable six-month period and his removal is not likely in the reasonably foreseeable future.  As discussed below, the Court agrees.  Petitioner's application for habeas relief should consequently be granted.

## I.    Legal Framework for Post-Final Order of Removal Detention

Because Petitioner has a final order of removal, Petitioner's detention is governed by 8 U.S.C. § 1231(a).  Under § 1231(a), "when an alien is ordered removed," the Attorney General "shall" remove the alien within ninety days.  8 U.S.C. § 1231(a)(1)(A).  This removal period begins to run on, as relevant here, "the date the order of removal becomes administratively final," or "[i]f the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement."  8 U.S.C. § 1231(a)(1)(B)(i), (iii).  Detention during the ninety-day removal period is mandatory.  8 U.S.C. § 1231(a)(2).  The removal period shall be extended "if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure or conspires or acts

to prevent the alien's removal subject to an order of removal."   8 U.S.C. § 1231(a)(1)(C).  Finally, inadmissible aliens, criminal aliens, and those who pose a risk to the community or of non-compliance with a removal order "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [§ 1231(a)(3)]."  8 U.S.C. § 1231(a)(6).

Section 1231(a)(6) does not limit the length of post-final order detention.  In *Zadvydas*, however, the United States Supreme Court applied the doctrine of constitutional avoidance to "read an implicit limitation into the statute."  533 U.S. at 689.  The Supreme Court held that § 1231(a)(6) authorizes post-removal-order detention only for a period "reasonably necessary" to accomplish the alien's removal from the United States.  *Id*. at 699-700.  The Court recognized six months as a presumptively reasonable period of time to allow the government to accomplish such removal.  *Id*. at 701.  The Eleventh Circuit subsequently explained that in order "[t]o state a claim under *Zadvydas* . . . an alien must show that: (1) he has been detained for more than six months following the final order of removal and (2) there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Vaz v. Skinner*, 634 F. App'x 778, 782 (11th Cir. 2015) (citing *Akinwale v. Ashcroft*, 287 F.3d 1050, 1052 (11th Cir. 2002) ("[I]n order to state a claim under Zadvydas the alien . . . must show post-removal order detention in excess of six months [and] also must provide evidence of a good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future.")).

## II.    Petitioner is Entitled to Release Under *Zadvydas*

As explained above, a claim under *Zadvydas* typically requires two showings: (1) post-final order detention longer than six months; and (2) no significant likelihood of removal in the reasonably foreseeable future.  *Akinwale*, 287 F.3d at 1052. Petitioner came into immigration custody on June 26, 2024.  Erickson Decl. ¶ 11. Petitioner filed his application for habeas relief on February 5, 2025, well beyond the six-month presumptively reasonable period under *Zadvydas*.  There is consequently no dispute that the first element of Petitioner's claim has been met.

The second *Zadvydas* prong requires a petitioner to show "there is good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future."  *Vaz*, 634 F. App'x at 782.  Petitioner has clearly made this showing.  The undisputed evidence establishes that Petitioner came into immigration custody in June 2024.  Erikson Decl. ¶ 11.  ICE then began the process of obtaining a Russian travel document for Petitioner.  Erickson Decl. ¶¶ 12-13.  But, on July 11, 2025, the Russian consulate informed ICE that it could not confirm Petitioner's citizenship and would not issue a travel document.  Stephens Decl. ¶ 9.  In August 2025, a deportation officer sent an inquiry to ICE Headquarters, Removal and International Operations, to see if Petitioner would be processed for removal to a third party.  *Id.* ¶ 10.  ICE must work through the Department of State to effect third-country removals, and ICE is still waiting for information regarding whether Petitioner will be identified for removal to a third country.  *Id.* ¶¶ 11-12.

This evidence shows that Petitioner has been in ICE custody for over 18 months and no travel document has been obtained for Petitioner. To the contrary, ICE was told six months ago that Russia would not issue a travel document for Petitioner. In those last six months, ICE continued to detain Petitioner but has not affirmatively identified Petitioner as an individual who can be removed to a third-party country. In other words, no affirmative steps to remove Petitioner have been taken since August 2025.

Respondents, however, argue that there is a significant likelihood of Petitioner's removal in the reasonably foreseeable future because ICE "has pursued removal to a third country" and the "Executive Branch . . . believes this process will bear fruit in the foreseeable future[.]" Respt's Resp. to Ct. Order 5, ECF No. 15. But this assertion is wholly unsupported by the record. There is no evidence that ICE has done anything to pursue a third-country removal other than submit a request, and that request has not even been approved. Stephens Decl. ¶ 12. *Zadvydas* states that "once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government *must* respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701 (emphasis supplied). Respondents have failed to do that here. Consequently, Petitioner's application for habeas relief should be granted.

## CONCLUSION

For the foregoing reasons, it is recommended that Petitioner's application for habeas relief (ECF No. 1) be **GRANTED**. Petitioner's motion to compel (ECF No. 11)

and motion for an emergency ruling (ECF No. 16) are **GRANTED**.  Pursuant to 28 U.S.C. § 636(b)(1), the parties may serve and file written objections to this Recommendation, or seek an extension of time to file objections, within fourteen (14) days after being served with a copy hereof.  The district judge shall make a *de novo* determination of those portions of the Recommendation to which objection is made. All other portions of the Recommendation may be reviewed for clear error.

The parties are hereby notified that, pursuant to Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object.  In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."

**SO RECOMMENDED**, this 12th day of January, 2026.

 s/ *Amelia G. Helmick*
UNITED STATES MAGISTRATE JUDGE

9